**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. 09-151 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| KELLY HARDY. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### INTRODUCTION

This case presents an issue of first impression in this District: whether a sentencing court should award monetary restitution under 18 U.S.C. § 2259 to a victim who was depicted in child pornography, from a criminal defendant who received, possessed, and distributed the pornographic images but was not involved with the victim's original abuse or the creation of the images. For the reasons below, this Court holds that restitution can be awarded in such a case. Although this Court has not addressed this issue before, the increasing frequency of victims' restitution requests has brought similar issues before a number of other district courts, which have treated them in a variety of ways. *See* John Schwartz, *Child Pornography, and an Issue of Restitution*, N.Y. TIMES, Feb. 3, 2010, at A19.[1]

A hearing and argument on the restitution request was held on March 15, 2010. (Docket No.

---

[1]
The Government has provided a list of cases resolved both for and against the victim in this case. (Docket No. 29-1). The Defendant has argued persuasively that this is neither a complete nor a precedential list of cases. (Docket No. 32 at 7-8). The list in and of itself provided little guidance to the Court, and was attributed no significance except as a source of case citations.

46, transcript at Docket No. 52).  At the hearing, Defendant's counsel expressed to the Court that, should the Court find that restitution is warranted in such a case, then Defendant would need an opportunity "to review, investigate, and contest the amount of damages and the means by which they were developed."  (Docket No. 52 at 4).  Likewise, in Defendant's Response to the Government's Brief on Restitution, Defendant expressed an intention to move under the Due Process clause for discovery regarding same.  (Docket No. 32 at 12, n. 4).  Accordingly, the Court will not make findings of fact regarding the nature and extent of damages at this time.  Instead, the questions the Court must answer are: (1) whether the victim seeking restitution is a "victim" as defined by § 2259; (2) whether § 2259 requires that causal connection be shown between the offenses of conviction and the alleged harm to the victim; (3) if so, whether causal connection can be established in this case; (4) if it is established, how a sentencing court should apportion liability; and (5) whether an award of restitution violates the Sixth Amendment right to a jury trial or the Eight Amendment prohibition on excessive fines and cruel and unusual punishment.

## FACTUAL BACKGROUND

Defendant, Kelly Hardy, pleaded guilty to distributing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(1), (a)(2), and (a)(4)(B).  (Docket No. 26).  According to the Affidavit accompanying the Criminal Complaint, on April 16, 2009 Defendant's home was searched, pursuant to a search warrant issued that day, by Immigration and Customs Enforcement investigators. (Docket No. 1-2 at 5).  The investigators found multiple data storage devices and computers in the home,[2] and analysis of the seized hard drives revealed thousands of

---

2

Among the computer equipment seized in the search were fourteen desktop computers, three laptop computers, sixty hard drives, over 4,000 CDs and DVDs, over 3,000 floppy disks, eight thumb drives, thirty six zip disks, two camcorders, one palm pilot, one digital camera, one 35 mm camera, two webcams, one cell phone, and over 800 VHS tapes. (PIR at ¶

illicit images in Defendant's possession. (*Id.*).  It was determined that many of these images had been shared by Defendant with others over the internet. (*Id.*).  Defendant admitted to using an internet file-sharing program, "Gigatribe," to access child pornography. (Pre-sentence Investigation Report, *hereinafter* "PIR," at ¶ 20).  Some of the child pornography possessed by Defendant depicted children whom law enforcement were able to identify. (PIR at ¶ 27).

One of the victims appearing in pornography possessed by Defendant was identified as "Amy," a victim who appeared in the "Misty Series" of images.[3] (Victim Impact Statement of Amy, *hereinafter* "VIS-A," at 1).  Amy is currently 21 years of age, and was sexually abused by her uncle, beginning at age 4. (*Id.*).  Her abuse has caused Amy a great deal of guilt, humiliation, and panic, and has negatively impacted her ability to function normally as an adult. (*Id.*). Amy was in psychological therapy as a result of her initial abuse, and showed some improvement.  Sometime later she received information that her images had been disseminated amongst countless sexual predators on the internet.  Amy now lives every day in fear that she will be recognized because of her images, and the knowledge that her images are being continually viewed has made her feel continually victimized since her discovery. (VIS-A at 1-2).  She reports difficulty functioning on a day to day basis, plagued by flashbacks, nightmares, and an inability to focus. (*Id.*).  Amy cannot drive, has dropped out of school, lives with her parents, and has at times resorted to substance abuse to cope with her memories. (*Id.* 2-3).

---

8).  Defendant is computer graphic design artist and animator. (*Id.*)

3

"Amy" is a pseudonym used by the victim to protect her anonymity.  A "series" is a collection of child pornography images depicting the same victim or victims; they are traded online among those who deal in child pornography.

Dr. Joyanna Silberg, Ph. D.[4] performed a psychological evaluation of Amy, for purposes of seeking restitution, between June 11, 2008 and November 10, 2008.  (Report of Psychological Consultation at 1, *hereinafter*, "Consult").  Dr. Silberg reports that Amy was first treated in 1998, immediately after the abuse was discovered, when she was 9 years old. (*Id.* at 2).  By the end of 1999 her therapist indicated that despite severe abuse and her initial presentment of flashbacks, lack of focus, fearfulness, anxiety, depression, hypervigilance, guilt, confusion, and inability to form trusting relationships, she was, "back to normal." (Consult at 2).  As a teenager, Amy had further difficulty coping with her past abuse, and began to drink heavily. (*Id.* at 3).  At seventeen years of age, Amy first learned that her images had been disseminated on the internet. (*Id.*).  Her psychological distress increased markedly and she now has difficulty functioning as a normal adult. (*Id.*)*.*  Dr. Silberg opines that knowing that the images are being viewed by others exacerbates Amy's initial harm caused by her uncle's abuse, and will significantly interfere with therapeutic resolution of her trauma. (*Id.* at 3-10).  Amy will have difficulty with her abuse for the rest of her life, because she will never be able to escape the reality that her images are part of the public domain. (*Id.*). Hence, Dr. Silberg believes Amy will require intensive therapy for the remainder of her life. (*Id.*).

Amy has also submitted an Economic Report written by Stan Smith, Ph.D.,[5] an economist with the Smith Economics Group, Ltd.  It calculates Amy's future lost wages and future counseling costs resulting from the continuing trauma of knowing her images will be forever circulating online,

---

4

Dr. Silberg is a psychologist, licensed by the Maryland State Board of Examiners, a Consulting Psychologist at the Sheppard Pratt Health System, and Senior Associate Editor of the Journal of Child & Adolescent Trauma.

5

Dr. Smith is Ph.D. in economics, President of the Smith Economics Group, and has published extensively on valuing future losses.

which he estimates total $3,367,854.00.[6]

## PROCEDURAL BACKGROUND

On April 17, 2009, a Criminal Complaint was filed against Defendant in the United States District Court for the Western District of Pennsylvania, claiming violations of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B). (Docket No. 1).  An Indictment of Defendant followed on May 5, 2009, charging in Counts 1-3, possession, receipt, and distribution of pornographic material in violation of various provisions of 18 U.S.C. § 2252. (Docket No. 11).  On October 22, 2009, the Court heard Defendant's Change of Plea from not guilty to guilty, on all counts of the Indictment. (Docket No. 25-26, transcript at Docket No. 50).  On December 18, 2010, the Probation Office provided the Court, as well as the government and Defendant's counsel, with copies of Amy's victim impact statement ("VIS-A")and a letter from her attorney seeking restitution, to which were attached the Consult by Dr. Silberg (and her credentials) and the Economic Report by Stan Smith, Ph.D. (and his credentials), and various secondary supporting materials.  On January 15, 2010, the Government filed its Restitution Request and brief in support. (Docket No. 29).  The Defendant replied with his brief in opposition on January 29, 2010. (Docket No. 32).  The victim's attorney submitted a revised Restitution Request on February 12, 2002, with the same attachments as the original, which was eventually made a part of the record at (Docket No. 51).  Defendant filed a reply to the revised Restitution Request on March 9, 2010. (Docket No. 48).  A hearing and argument on the restitution request was held on March 15, 2010. (Docket No. 46, transcript at Docket No. 52).  Sentencing is presently scheduled for April 23, 2010 at 1:00 p.m.

---

6

As discussed above, Defendant has expressed an intent to contest the evidence supporting this estimate.

## APPLICABLE LEGAL STANDARD

In the present case, Amy is seeking restitution pursuant to 18 U.S.C. § 2259, which provides for mandatory restitution to any victim of specific offenses pertaining to the "Sexual Exploitation and Other Abuse of Children," including the offenses at 18 U.S.C. §§ 2252(a)(1), (a)(2), and (a)(4)(B), to which Defendant has pled guilty. § 2259 states:

> **(a) In general.--**Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
>
> **(b) Scope and nature of order.--**
>
> > **(1) Directions.--**The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).
> >
> > **(2) Enforcement.--**An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.
> >
> > **(3) Definition.--**For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--
> >
> > > **(A)** medical services relating to physical, psychiatric, or psychological care;
> > >
> > > **(B)** physical and occupational therapy or rehabilitation;
> > >
> > > **(C)** necessary transportation, temporary housing, and child care expenses;
> > >
> > > **(D)** lost income;
> > >
> > > **(E)** attorneys' fees, as well as other costs incurred; and
> > >
> > > **(F)** any other losses suffered by the victim as a proximate result of the offense.
> >
> > **(4) Order mandatory.--(A)** The issuance of a restitution order under this section is mandatory.
> >
> > > **(B)** A court may not decline to issue an order under this section because of--
> > >
> > > > **(i)** the economic circumstances of the defendant; or
> > > >
> > > > **(ii)** the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.
>
> **(c) Definition.--**For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or

6

deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 2259.

The Government bears the burden of demonstrating, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e); *United States v. Graham*, 72 F.3d 352, 356 (3d Cir. 1995). A restitution order is reviewed for abuse of discretion. *Graham*, 72 F.3d at 355.

## DISCUSSION

### I.    Statutory Framework

When imposing criminal sentences, district courts are required by 18 U.S.C. § 3553(a)(3) to consider all the types of sentences available, and 18 U.S.C. § 3553(a)(7) specifically requires them to consider "the need to provide restitution to any victims of the offense." As explained above, § 2259 provides for mandatory restitution for violations of the statutes to which Defendant has pled guilty.

Congress enacted §2259 in 1994, as part of the Violence Against Women Act ("VAWA"), Pub. L. No. 103-322, 108 Stat. 1796, and it was the first federal statute to require sentencing courts to impose restitution. Prior to its enactment, federal courts awarded restitution in criminal cases at their discretion, pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA" or "§ 3663"), first enacted in 1982 as 18 U.S.C. § 3579, 1982, Pub. L. 97-291, 1982 S 2420.

Two years after the VAWA mandated restitution for sexual offenses against children, Congress passed the Mandatory Victim Restitution Act of 1996 ("MVRA"), as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub L. No. 104-132, 110 Stat.1214. The

MVRA amended § 2259 and § 3663 and created a new section,18 U.S.C. § 3663A, mandating restitution for a broad range of crimes of violence and crimes against property.  More recently, in 2004, Congress enacted the Crime Victims' Rights Act ("CVRA"), which reiterated the right to restitution created by the MVRA and specified that victims may petition the court of appeals for a writ of mandamus if the sentencing court denies a proper restitution request.  18 U.S.C. § 3771, Pub. L. 108-405, 118 Stat. 2260.

## II.    Purposes of Restitution

Restitution in criminal cases serves more than one purpose.  Courts have found that restitution is not only a means of making a victim whole, but also serves punitive and rehabilitative purposes.  *See Hughey v. United States*, 495 U.S. 411, 418 (1990); *Kelly v. Robinson*, 479 U.S. 36 (1986).  Unfortunately, the Supreme Court and the Courts of Appeal have not addressed the purposes of restitution under 18 U.S.C. § 2259.  Nonetheless, their jurisprudence on other restitution statutes is instructive.

Before the mandatory restitution regime implemented by § 2259 and the MVRA, the Supreme Court addressed the purposes of criminal restitution in *Kelly v. Robinson*, 479 U.S. 36, where a defendant sought to have her restitution discharged as a debt in bankruptcy court.  *Id.*  The Court declined to categorize restitution as a debt that may be civilly discharged, explaining that an order of restitution is part of the judgment of conviction.  *Id*. at 46.  Noting that the Connecticut restitution statute at issue did "not require imposition of restitution in the amount of the harm caused," but rather "provide[d] for a flexible remedy tailored to the defendant's situation," the Court held that "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders

imposed in such proceedings operate 'for the benefit of' the State . . . . not . . . 'for . . . compensation' of the victim." *Id.* at 53. The Court found that because restitution emphasized the direct connection between a victim's loss and the defendant's crime, it provided the judgment with a greater deterrent effect than an arbitrarily imposed fine. *Id.* at 49, n.10*, citing* Victim Restitution in the Criminal Process: A Procedural Analysis, 97 HARV. L. REV. 931, 937-41 (1984).

In another Supreme Court case preceding the current incarnation of § 2259 and the MVRA, the Court considered the purpose of discretionary restitution under the VWPA. *Hughey v. United States*, 495 U.S. 411, 418 (1990). The Court held that Congress meant restitution to compensate the victim for his or her loss, and explained that this was the reason "restitution is tied to the loss *caused by* the offense of conviction." *Id.* at 418 (emphasis added).

However, when interpreting the 18 U.S.C. § 3663A mandatory restitution statute, the Third Circuit Court of Appeals has made clear that restitution serves multiple functions, including acting as a *criminal penalty. United States v. Edwards*, 162 F. 3d 87, 91-2 (3d Cir. 1998), *citing United States v. Sleight*, 808 F. 2d 1012, 1020 (3d Cir. 1987) ("While one purpose of restitution under the Federal Probation Act is to make the victim whole, restitution . . . is imposed as a part of sentencing and remains inherently a criminal penalty"). The Court of Appeals cautioned that criminal restitution should not be confused with civil remedies, despite some similarities. *Id.* The Court of Appeals also stated that there is a retributive aspect to restitution when it is mandated regardless of the defendant's ability to pay, as mandated by the mandatory restitution statutes. *Id.*

Most recently, the First Circuit Court of Appeals stated in *United States v. Aguirre-Gonzalez*, 597 F.3d 46 (1st Cir. 2010) that while mandatory criminal restitution should not be considered civil in nature in any respect, its purpose has shifted from being primarily penal and rehabilitative, to

substantially compensatory. *Id.* at 52.  The passage of the Crime Victims Rights Act, 18 U.S.C. §

3771, reinforces the compensatory nature of restitution. *Id.* at 4.

In sum, courts agree that restitution is a criminal penalty that should not be confused with

civil damages.  And, its purposes are not only punitive but also retributive, and perhaps even

rehabilitative.

### III.   Amy is a "Victim" Under § 2259[7]

Under § 2259, a defendant can only be required by the sentencing court to pay restitution to

the victim of his crime.  Therefore, the Court must consider whether Amy is a "victim" as that term

is defined in § 2259:

> (c) Definition. – For purposes of this section, the term "victim" means the individual
> harmed as a result of a commission of a crime under this chapter[.][8]

18 U.S.C. § 2259.  As an order for restitution turns upon the applicability of this term to Amy, the

Court must determine whether Defendant's acts may be said to have 'victimized' Amy.

According to *New York v. Ferber*, 458 U.S. 747 (1982) a criminal defendant's distribution

of child pornography images does victimize the person depicted in the images.  In *Ferber*, the

defendant was appealing his conviction under a New York law for distributing movies of minors

engaging in sexual acts. *Id.* at 747.  In upholding his conviction, the Supreme Court detailed how

child pornography harms the children depicted.  The Court underscored the seriousness of child

pornography by stating Congress' finding that "[c]hild pornography and child prostitution have

become highly organized, multimillion dollar industries that operate on a nationwide scale . . . [and

---

7

Defendant has requested the opportunity to brief the Court on the issue of whether Amy is "victim" as defined by § 2259.
As the following analysis makes clear, the Court does not consider it an open question.

8

This general definition of victim is in keeping with BLACK'S LAW DICTIONARY, 8th ed. 2004, which defines "victim" as
"person harmed by a crime, tort or other wrong."

that the] use of children as . . . subjects of pornographic materials is very harmful to both the children and the society as a whole." *Ferber*, 458 U.S. at 749, 759.  The creation of child pornography harms children by hindering the development of healthy sexual and affectionate relationships with others, creating sexual dysfunction, and by creating potential future child abusers. *Id.* at 758-59.  The subsequent proliferation and distribution of a child's pornographic images enhances the severity of the initial harm suffered by creating an indelible record of his or her past abuse. *Id.* at 759.  Children depicted in pornography suffer throughout life with the knowledge that the record of their abuse is widely available, and this knowledge creates a lasting and severe emotional disturbance. *Id.* at 760.

The Supreme Court revisited this question in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2005), and came to the same conclusion: victims of child pornography are harmed by the creation of the images and a new harm is caused each time the images are distributed.  *Id.* at 249 ("[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated.  Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.").

The Third Circuit Court of Appeals recently came to the same conclusion when it held that a child depicted in pornography possessed by a defendant was directly victimized by the defendant. In *United States v. Goff*, 501 F. 3d 250, (3d Cir. 2007), the court responded to the defendant's contention that his crime of possession of child pornography victimless, and that he was a "curious, casual user," by stating:

> Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography.  These small victims may rank as 'no one else' in [defendant's] mind, but they do indeed exist . . . Their injuries and the taking of their innocence are all too real.  There is nothing 'casual' or theoretical about the scars they will bear from being abused for [defendant's] advantage.

. . .

> The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. Consumers such as [defendant] who 'merely' or 'passively' receive or posses child pornography directly contribute to this continuing victimization. Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home[.]

*Id.* at 259; *see also United States v. Knox*, 32 F. 3d 733 (3d Cir. 1994).

Therefore, Amy was a victim of Defendant's receipt, possession, and distribution of the pornographic images in which she appeared as a young child. Amy's appearance in images held by Defendant make her an "individual harmed as a result of a commission of a crime" under § 2259, and therefore a victim for purposes of ordering restitution under § 2259.

## IV.    Proximate Cause is Required for an Award of Restitution under § 2259.

In this case, the central question is what, if any, causal nexus must exist between Defendant's crime and Amy's losses for the Court to award restitution. The attorney representing Amy argues that the wording of 18 U.S.C. § 2259 indicates that no causal connection need be shown, that the award of restitution is automatic. (Docket No. 51 at 25-29). The Government and Defendant both argue that there is a proximate cause requirement, though they would each have the Court apply that requirement differently. (Docket Nos. 29 at 7-13; 32 at 3-10).

Every Circuit to address restitution under § 2259, including this Circuit, has held that the statue requires a causal connection between the victim's losses and the defendant's offense. *See In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009)(collecting cases); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999)(holding that § 2259 "requires a causal connection between the offense of conviction and the victim's harm."); *United States v. Crandon*, 173 F.3d122, 125 (3d Cir. 1999)(requiring showing of "proximate cause"). However, the language of § 2259 is not without ambiguity on this point.

*Crandon* is the only Third Circuit case to address the question of § 2259's causation requirement, and it does so only in passing, given the specific facts of that case, before finding that § 2259 requires "proximate cause," which it interprets as a "substantial factor" requirement. *Crandon*, 173 F.3d 122.  In *Crandon* the Third Circuit Court of Appeals affirmed an award of restitution against a defendant who pleaded guilty to receiving child pornography, but who had also had illegal sexual relations with the victim. *Id.* at 124-25.  After the defendant's contact with the victim, she needed therapy, and sought restitution for the costs. *Id.* at 126.  The defendant argued that he was not the cause of the therapy because she suffered from pre-existing, untreated psychological problems. *Id.*  The Court of Appeals began its analysis by stating that "[t]he mandatory restitution provision of the Protection of Children Against Sexual Exploitation Act requires awarding the full amount of the victim's losses suffered as a proximate result of the offense." *Id.* at 125, *citing* 18 U.S.C. § 2259(b)(3).  Probably because the facts of that case involved direct contact between the defendant and the victim and therefore the type of causation required was not at issue, the Court of Appeals did not delve any further into the question of whether § 2259 contains a proximate cause requirement or not.  This quick determination nonetheless has formed the basis for other courts finding that § 2259 requires proximate causation.  *See, e.g.*, *Laney*, 189 F.3d 954.

Amy's counsel argues that § 2259 defines "victim" more broadly than in any other federal restitution statute and that it does not require "proximate harm" or "direct harm" but instead only a more generalized harm.  (Docket No. 51 at 25).  At least one court has awarded restitution under § 2259 without finding any proximate cause. In *United States v. Staples*, 2009 WL 2827204 (S.D. Fla. 2009), another case where Amy sought restitution, the court held that: § 2259 mandated restitution; that Amy was harmed as a result of being in pornography received, possessed, and distributed by the

13

defendant; and that the defendant was jointly and severally liable for the full amount of the losses Amy claimed from her victimization. *Id.* at 3-4.[9]  The *Staples* court was not persuaded by the defendant's argument that there was no causal nexus between his conduct and Amy's harm.  The court responded that "[t]he fact that the victim . . . did not have personal knowledge of this defendant's activities at the time she was evaluated . . . does not negate the harm that 'Amy' suffered and continues to suffer as a result of this defendant's possession of images depicting her sexual abuse as a child." *Id.* at 3.

The language of § 2259 regarding a causal requirement is ambiguous. 18 U.S.C. § 3663, the discretionary restitution statute, and 18 U.S.C. § 3663A, the mandatory restitution statute, both specify that proximate cause must be found for a sentencing court to award restitution, by defining "victim" as follows:

> (2) For purposes of this section, the term "victim" means a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered[.]

18 U.S.C. §§ 3663, 3663A (emphasis added).  This clarity does not exist in § 2259.  Instead, § 2259 has these definitions:

> (c) Definition. – For purposes of this section, the term "victim" means the individual harmed *as a result of* a commission of a crime under this chapter
> . . .
> (3) Definition.– For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for–
>> (A) medical services relating to physical, psychiatric, or psychological care;
>> (B) physical and occupational therapy or rehabilitation;
>> (C) necessary transportation, temporary housing, and child care expenses;
>> (D) lost income;
>> (E) attorney's fees, as well as other costs incurred; and

---

[9]
*Staples* is currently on appeal in the Eleventh Circuit at Docket No. 09-12070-A.

(F) any other losses suffered by the victim *as a proximate result of* the offense.

18 U.S.C. § 2259 (emphasis added).  In context, the phrases "as a result of" and "as a proximate result of" are unclear.

### A.    The Language of 18 U.S.C. § 2259

"Of course, the 'starting point in every case involving construction of a statute is the language itself.'" *Kelly v. Robinson* 479 U.S. 36, 43 (1986)(quoting *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975).  The statutory language is only a starting point, however, and "'[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Id.* (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222 (1986)).

In the instant case, the question is whether the phrase "any other losses suffered by the victim as a proximate result of the offense" in § 2259(c)(3)(F) means that the other enumerated losses must also be suffered as a proximate result of the offense.  That is to say, does the last phrase in the statutory definition of "full amount of victim's losses" - a catch-all phrase defining generalized 'losses' - embrace the specifically enumerated types of loss preceding it, or does it stands alone?  The doctrine of *ejusdem generis* applies when general words follow, or are surrounded by, specific words.  In such cases, the general words are to be understood in light of the specific terms. *Hughey v. United States,* 495 U.S. 411, 419 (1990).

> The doctrine . . . is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute and other legal instruments can be given effect, all parts of a statute can be construed together, and no words will be superfluous.
>
> ***
> The rule accomplishes the purpose of giving effect to both the particular and general

> words, by treating the particular words as indicating the class, and the general words
> as extending the provisions of the statute to everything embraced in that class, though
> not specifically named by the particular words.

2A SUTHERLAND STATUTORY CONSTRUCTION §47:17 (7th ed.). *See also In re Gi Nam*, 273 F. 3d

281, 287 (3d Cir. 2001), *United States v. Weadon*, 145 F. 3d 158, 161 (3d Cir. 1998).

In *Porto Rico Ry. Light & Power Co. v. Mor*, 253 U.S. 345 (1920), the Supreme Court found

that a limiting clause at the end of a list applied to every element of the list.  The statute at issue

conferred jurisdiction upon courts over

> all controversies where all the parties on either side of the controversy are citizens
> or subjects of a foreign state or states, or citizens of a state, territory, or district of the
> United States not domiciled in Porto Rico[.]

*Id.* at 346.  The question was whether, 'not domiciled in Porto Rico' applied to foreigners as well as

United States citizens.  The Court found that it did, stating that there was no reason the phrase should

not apply to all individuals enumerated by the statue, and that "[w]hen several words are followed

by a clause which is applicable as much to the first and other words as to the last, the natural

construction of the language demands that the clause be read as applicable to all." *Id.* at 348.

In the case of *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court read a catch-

all provision at the end of a list of elements to include only elements similar to the specifically

enumerated ones.  In that case, which also dealt with a restitution statute, the statute specified that

> The court, in determining whether to order restitution . . . and the amount of such
> restitution, shall consider the amount of the loss sustained by any victim as a result
> of the offense, the financial resources of the defendant, the financial needs and
> earning capacity of the defendant and the defendant's dependents, and other such
> factors as the court deems appropriate.

*Id.* at 416-17.  In *Hughey*, the government sought to construe the final catch-all phrase, "and other

such factors as the court deems appropriate," to mean it could submit for consideration losses

suffered by the victim that were not tied to the offense committed. *Id.*  The Supreme Court held that the specific enumerations before the general catch-all phrase were meant to limit the scope of the catch-all phrase.  *Id.*  The "'catch-all provision' is 'to be read as bringing within a statute categories *similar in type* to those specifically enumerated.'" *Id.* at 419, *citing Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973) (emphasis added).

In *Seatrain Lines*, the Supreme Court dealt with a catch-all phrase in a statute that was structured like the one in § 2259 and held that a limitation within the catch-all phrase applied to every element in the list that preceded it.  The statute at issue covered agreements:

> (1) fixing or regulating transportation rates or fares; (2) giving or receiving special rates, accommodations, or other special privileges or advantages; (3) controlling, regulating, preventing, or destroying competition; (4) pooling or apportioning earnings, losses, or traffic; (5) allotting ports or restricting or otherwise regulating the number and character of sailings between ports; (6) limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; (7) or in any manner providing for an exclusive, preferential, or cooperative working arrangement.

*Id.*  The Supreme Court determined that the final phrase in the statutory provision meant that the statute did not apply to a one-time agreement creating no continuing obligations, because the phrase "working arrangement" implied that all of the specifically enumerated categories preceding it were ongoing working agreements. *Id.* "This last category was clearly meant as a catchall provision, 'intended . . . to summarize the type of agreements covered.'" *Id.*  "Since the summary provision is explicitly limited to 'working arrangement(s),' it is reasonable to conclude that Congress intended this limitation to apply to the specifically enumerated categories as well." *Id., see also United States v. Fellows*, 157 F. 3d 1197 (9th Cir. 1998).

Similarly, in § 2259 the final phrase "(F) any other losses suffered by the victim as a proximate result of the offense," is a catch-all provision and a reading of the plain text of the statute

suggests that it should be interpreted to apply to all of the enumerated types of losses that precede it.  18 U.S.C. § 2259.

Further, in *Seatrain Lines*, the Supreme Court noted that the legislative history of the act being construed strongly supported the court's interpretation.  *Seatrain Lines*, 411 U.S. at 736.  In the instant case, the legislative history and the related mandatory restitution statutes also strongly support fining that there is a proximate cause requirement.

### B.      The Legislative History of § 2259 and the Other Restitution Statutes

The text of a statute "is only the starting point [and, in] expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson* 479 U.S. at 43 (internal quotation omitted).  And, considering that the mandatory restitution statute § 3663A directly incorporates a proximate cause standard into its definition of 'victim,' whereas § 2259 does not, the Court must consider whether the distinction was part of Congress's intent.  But, the legislative history of § 2259 and § 3663A suggest that it was not.

The Mandatory Victims Restitution Act of 1996 enacted sweeping changes to the restitution process, amending the permissive restitution statute, § 3663, adding the general mandatory restitution statute, §3663A, and amending the existing mandatory restitution statutes, §§ 2248, 2259, and 2264, to reflect a cohesive scheme. S. REP. NO. 104-179, *passim* (1995). And in its legislative history, the Congress laid out its specific reasoning for the changes to the restitution statutes therein, including § 2259.  Through the MVRA, Congress intended to create a streamlined process that only awarded restitution to all identifiable victims suffering an actual loss. *Id.* at 29.

Section 103 of the MVRA added the mandatory restitution statute, § 3663A, and amended

§ 3663, so that both sections defined "victim" as

> (2) . . . a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered[.]

18 U.S.C. §§ 3663, 3663A.  In enacting the MVRA, Congress expressed its intent to require proximate causation for mandatory restitution:

> [T]he committee amendment requires that there be an identifiable victim who suffers a physical injury or pecuniary loss before mandatory restitution provisions would apply.  The committee intends this provision to mean . . . that mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss *directly and proximately caused by* the course of conduct under the count or counts for which the offender is convicted.

S. REP. NO. 104-179 at 29-30 (emphasis added).

At the same time that section 103 of the MVRA added § 3663A and amended § 3663, Section 104 amended the mandatory restitution provisions of §§ 2248, 2259, and 2264 to conform with one another. Congress stated that "this section [104] is intended by the committee to conform the mandatory and permissive restitution provisions in current law to the provisions of this act." *Id.* at 30.  Finally, Section 105 of the MVRA made all restitution provisions under Sections 103 and 104 subject to the consolidated procedural requirements of 18 U.S.C. 3664. *Id.*

Congress clearly intended the MVRA to create a uniform scheme for ordering restitution in criminal cases and to bring the permissive and mandatory restitution statutes into conformity with one another.[10]  And, therefore, the legislative history also suggests that § 2259 includes a proximate cause requirement.

---

10

Congress more recently defined the term "crime victim" to include a proximate harm requirement, albeit not in direct reference to §§ 2259, 3663, and 3663A, when it enacted 18 U.S.C. § 3771, the Crime Victims' Rights Act in 2004, which provides certain rights to victims in criminal proceedings.  It defines "crime victim" for purposes of the statute as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. §3771(e).

Given the unanimity of the Circuits that have addressed the question, the language of the statute, and the legislative history of its amendments, this Court finds that 18 U.S.C. § 2259 does require that a victim's losses be proximately caused by the criminal acts of the defendant for restitution to be awarded.

### V.    The Evidence Presented by the Government is of the Type Required to Show that Defendant has Proximately Caused Amy's Losses.

While Defendant has acquiesced to having the Court rule on the general point of whether proximate cause can be shown in this case, he has also expressed his intent to move "under the due Process Clause for discovery of all financial data on which the claim rests, an opportunity to depose the alleged victim, and an opportunity to have the monetary assertions evaluated by independent experts regarding the personal and economic claims."  (Docket No. 32 at 12, n. 4).  Therefore, the Court will not make specific findings of fact based on said evidence before Defendant has a chance to contest same.[11]

Instead, the Court will address the general question of whether the Government can establish a causal connection between Defendant's criminal conduct for which he is being convicted and Amy's losses.[12]  *Hughey v. United States*, 495 U.S. 411, 416 (1979)(holding that restitution is authorized only for losses caused by conduct underlying the offense of conviction and not for other

---

11

Any eventual factual findings as to the demonstrated losses and the amount of restitution applicable will be made by a preponderance of the evidence standard, with the government bearing the burden of proof as to the loss.  18 U.S.C § 3664(e)("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.").  This is also the standard and burden of proof applicable to the resolution of disputed facts relevant to sentencing for purposes of calculating advisory sentences, including restitution, under the United States Sentencing Guidelines.. *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007); U.S.S.G. § 6A1.3 cmt. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."). 12.  (Docket No. 59 at 4).

acts); *United States v. Akande*, 200 F.3d 136, 141 93d Cir. 1999)("The conduct underlying the offense of conviction . . . stakes out the boundaries of the restitutionary authority.").  To do so, the Court must consider what constitutes proximate cause in such a case  and how the "substantial factor" requirement of *Crandon* should be applied. 173 F.3d at 126.

One Third Circuit case, *United States v. Goff* 501 F.3d 250 (2007), suggests that simply receiving and possessing child pornography directly causes the harm to the victim – including the harm caused by the initial abuse – because doing so maintains an illicit and harmful market by actively receiving, possessing, and distributing pornography.  In *Goff*, the Court of Appeals held that

> The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. 'The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.' (*citing, New York v. Ferber*, 458 U.S. 747, 759 (1982)).  Consumers such as [defendant] who 'merely' or 'passively' receive or possess child pornography *directly contribute* to this continuing victimization.  Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home, and his voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, has condemned in the strongest terms.

*Id.* at 259 (emphasis added). *See also*, *United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998) ("The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions.  The consumer who 'merely' or 'passively' receives or possesses child pornography directly contributes to this continuing victimization. There is no sense in distinguishing, as Norris has done, between producers and the consumers of child pornography.").  The *Goff* court did not rely on the proximate cause standard established in *Crandon*, but rather suggested that defendants like Goff *directly* caused the harm.  *Id.* at 259 (quoting 18 U.S.C. § 2251 n. at 611 ("Congress finds that . . . where children are used in its production, child pornography permanently records the victim's abuse, and *its continued existence*

*causes* the child victims . . . continuing harm")(emphasis added, ellipsis in original)).  The Court of Appeals stated that possessors like Defendant "create a market" for victimization by presenting an economic motive for production. *Goff*, 501 F.3d at 260. Though *Goff* did not address the question of restitution, it is strong evidence that according to the Third Circuit Court of Appeals producers and possessors of child pornography are both directly responsible for the harm to the victim.  *Goff* suggests that causation could be found in the instant case, simply because Defendant had a part in maintaining the illicit and harmful market by actively receiving, possessing, and distributing pornography.

However, in most recent cases where Amy has sought restitution, district courts have found that the proffered evidence was not sufficient to prove that the defendants' conduct proximately caused Amy's losses.  *United States v. Van Brackle*, Cr.No. 08-42 2009 WL 4928050 (N.D.Ga. Dec 17, 2009); *United States v. Paroline*, 672 F. Supp.2d 781 (E.D.Tex. 2009); *United States v. Berk*, 666 F. Supp.2d 182 (D.Me. 2009); *but see, United States v. Brunner*, 2010 WL 148433 (W.D. N.C. 2010)(applying a rule of reasonableness to determine that the defendant had proximately caused part of Amy's generalized harm and awarding partial restitution).  In the Third Circuit, a showing of "proximate cause" for purposes of restitution under § 2259 requires only that a defendant's conduct be a "substantial factor" in the victim's losses, *Crandon*, 173 F.3d at 126, and the evidence proffered by Amy can demonstrate that it was.

The boundaries of proximate cause are murky, and it is a concept more familiar to the tort realm than the criminal one.  Prosser and Keeton describe it thus:

> 'Proximate cause' — in itself an unfortunate term — is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and

> beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' *North v. Johnson*, 58 Minn. 242, 59 N.W. 1012 (1894). As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 264 (5th ed. 1984).

Proximate cause is often considered to be a subset of cause in fact, or "but for" cause. *See e.g. U.S. v. Neadle*, 72 F.3d 1104, 1119 (3d Cir. 1995) ("Proximate cause . . . is a more explicitly policy-based determination of whether an actor's conduct, despite its being a cause in fact, is too tenuously linked to the injury to hold the actor liable."). But, this is not always the case, and the "substantial factor" test formulation endorsed by the court in *Crandon* is one means of accounting for the unusual situations where limiting proximate causation to a subset of but for cause is inappropriate to the ends of justice.

The exemplary, if unusual, case is that of "concurrent cause," where multiple actors each do something which would, on its own, be sufficient to bring about the harm (as when, for example, two people independently and simultaneously shoot a victim in a manner that would mortally wound him, and the victim dies from the combined effects of the two wounds); in such a case the law considers each of the acts to be the cause of the result, even if technically there is no "but for" causation since the harm would still have occurred absent either one of the acts. 1 SUBCRL § 6.4; *Wilson v. State*, 24 S.W. 409 (Tex.Cr. 1893). In the present instance, Amy has suffered a harm caused by innumerable actors, including her uncle who originally abused her and disseminated her images, other criminal defendants who have been found guilty of similar crimes, an unknown number of others who possessed or distributed her images, and Defendant himself. Analogous

situations with multiple concurrent causes are more common in the realm of torts, where the standard approach has been to find proximate cause when the court finds, as it did in *Crandon*, that the wrongful conduct was a "substantial factor" in the harm. *Crandon*, 173 F.3d at 126; *see Fedorvzyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69 (3d Cir. 1996)(holding that under New Jersey law, when more than one act could have caused an event, then liability for one such act will attach if it was a substantial factor in causing the harm); *Jones v. Montefiore Hospital*, 431 A.2d 920 (Pa. 1981)(holding that proximate cause may be established when a defendant's negligent act was a substantial factor in bringing about a plaintiff's harm, and that the substantial factor need not be the only cause which produces the harm.). Accordingly, the Court will examine how courts handle some analogous tort situations.

As the Supreme Court suggested, the republication or transmittal of defamatory material is analogous to, and related to, the distribution of child pornography. *Ashcroft v. Free Speech Coalition*, 535 U.S. at 249 ("Like a defamatory statement, each new publication of the [child pornography] would cause new injury to the child's reputation and emotional well-being."). Those who repeat or otherwise republish defamatory material are typically subject to liability as if they had originally published it. Rest. 2d Torts § 578; *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 190 (3rd Cir. 1998)(New Jersey law subjects a republisher to the same liability as the original defamer); *Medico v. Time, Inc.* 643 F.2d 134, 137 (3d Cir. 1981)(Pennsylvania law subjects a republisher to the same liability as the original defamer). This analogy suggests that Defendant should be just as liable as he who originally distributed the images of Amy.[13]

---

13
This is not to suggest, of course, that the original *production* of the images of Amy, i.e. her uncle's abuse of her, is equivalent to Defendant's actions.

Another potentially useful tort analogy can be found in product liability cases where so-called Alternative Liability Theory provides a means of establishing which of several defendants who manufactured a product injured the plaintiff. 63 Am. Jur. 2d Products Liability § 156; Rest. 2d Torts §433B(3); *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp.2d 638, 646-47 (E.D. Pa. 2006)(Pennsylvania has adopted alternative liability as defined in the Restatement of Torts.)  This theory allows a plaintiff to seek damages, even though he or she cannot meet traditional causation tests. 63 Am. Jur. 2d Products Liability § 156.  Once the plaintiff shows that a particular product was the proximate result of an injury, the burden shifts to the defendants to prove that they did not cause the harm.  Tortfeasors may be held jointly and severally liable. *Id.*  In the instant case, it is clear that Amy was victimized and that a large number of known and unknown offenders, including Defendant, are responsible for that victimization.  An application of the Alternative Liability Theory would suggest that it would then fall to the Defendant to show that his criminal acts were not the proximate cause of Amy's injury.[14]  The Court is mindful, however, that these are tort theories of liability, not criminal ones, and considers them only as helpful analogies rather than simply adopting them to find proximate causation for the purposes of criminal restitution.

The *Crandon* court upheld the sentencing court's use of a "substantial factor" test for proximate cause, and its reliance on the expert opinion of a social worker that the defendant's acts

---

[14] The Court is not endorsing an actual burden-shifting approach, as the burden of proving criminal restitution rests with the Government, but if the Government can carry that burden, then this theory suggests that joint and several liability may be appropriate.  In a slight variation on the Alternate Liability theory, some courts have adopted a "Market-Share Alternate Liability Theory." 63 Am. Jur. 2d Products Liability § 199.  This theory arose in pharmaceutical cases where multiple companies manufactured and marketed the same drug which was found later to be harmful. *Id.*  Even though there was no way to tie a specific manufacturer to the harm to a specific person, this theory found that "each defendant contributed to the risk of injury to the public and consequently to the risk of injury to individual plaintiffs; each defendant shares in some measure a degree of culpability in producing or marketing" and therefore assigned joint and several liability. *Id.*

were a "significant contributing factor" to the victim's emotional troubles and resulting financial

losses. *Crandon* 173 F.3d at 126.  The Court of Appeals found that a report submitted by the victim's

treating psychiatrist stating that the defendant's acts "exacerbated" her depression, necessitating

treatment, provided the proof of the proximate cause required by § 2259. *Id.*  Likewise, in the present

case, Dr. Silberg's Consult draws a connection between Amy's knowledge that the images are

circulating on the internet and her ongoing psychological condition.  (Consult at 3-10).   As *Ferber*

teaches, the distribution of child pornography does harm the victim depicted in it.  Thus, the real

issue is not whether Defendant has caused Amy harm – he has, because he circulated the images –

but whether his doing so is a substantial factor in her overall harm.  It is undoubtedly true that

harmful images of Amy would be circulating on the internet even if it were not for the conduct of

Defendant.  But, in this Court's estimation, Amy has shown by a preponderance of the evidence that

Defendant's conduct aided in the circulation of said images, that the circulation has harmed her, and

that, therefore, Defendant's conduct caused at least part of her overall harm.  She has, therefore,

shown that Defendant's conduct is a substantial factor in her psychological harm and economic

losses.  Accordingly § 2259's directive that the Court "shall direct the defendant to pay the victim

(through the appropriate court mechanism) the full amount of the victim's losses as determined by

the court pursuant to paragraph (2)" applies. 18 U.S.C. §2259(b)(1).

## VI.    The Restitution Amount

Defendant has declared an intent to contest the amount of any damages and to review and

investigate the means by which they were developed.   (Docket Nos. 32 at 12, n. 4; 52 at 4).

Accordingly, the Court will not make findings of fact as to the amount of damages at this time.

However, the standard for making those findings bears explication.  § 2259 mandates that the Court

award restitution in "the full amount of the victim's losses" and specifically forbids the Court from apportioning the amount based on "economic circumstances of the defendant." 18 U.S.C. §2259. But, it also directs the Court to award restitution "as determined by the court . . . in accordance with section 3664 in the same manner as an order under section 3663A." *Id.*

Under § 3664(h), which governs awards of restitution under § 3663A, and, therefore, under § 2259, in cases with more than one defendant, a sentencing "court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. §3664(h); *see United States v. Zander* 319 Fed.Appx. 146, 150 (3d Cir. 2009) (§ 3664(h) allows, but does not require, a sentencing court to apportion restitution.). The express language of § 2259(b)(4)(B) forbids the Court from considering the "economic circumstances of the defendant," but it does not specify whether it is appropriate to apportion liability based on the "level of contribution to the victim's losses" as suggested by § 3664(h). In *Crandon*, when the defendant suggested that he should only be required to pay a percentage of the restitution, given the victim's pre-existing psychological condition, the Court of Appeals simply replied that "once proximate cause is established, the statute requires the court to order restitution for the 'full amount of the victim's losses,'" adding that "[t]here is nothing in the statute that provides for a proportionality analysis." 173 F.3d at 127 n.2.

Faced with the same question, other courts have sought to strike a balance between making the victim whole and not penalizing the defendant disproportionately for his part in the losses. In *Staples*, the district court imposed joint and several liability after it found that Amy was a "victim" according to statute (though, in *Staples*, the court did *not* use a proximate cause requirement). 2009

WL 2827204 at 3.  The *Staples* court held the defendant jointly and severally liable because it would be improper for the victim to receive more than was due as a result of the defendant's crime, and because Amy was seeking restitution in other cases. *Id*. at 4.  In *United States v. Brunner*, 2010 WL 148433, at 3 (W.D.N.C. 2010) the court applied a rule of reasonableness to determine what losses Amy suffered as a proximate result of her victimization.  The court found that the defendant was only a small contributor to the overall loss and that coordinating joint liability among so many potential offenders would be too complex; therefore, it apportioned the total amount of Amy's claimed losses. *Id.* at 4.  In the end, the *Brunner* court awarded Amy $6,000.00 of the $2,855,173.00 claimed by Amy. *Id.*  Likewise, in *United States v. Hicks*, C.A.No. 09-150, 2009 WL 4110260, at 4-6 (E.D.Va. 2009), a case involving a different victim known as "Vicky," the Court, after finding that there was proximate cause tying the defendant's conduct to Vicky's harm, considered the large number of other offenders who caused the harm and determined that an award of $3,000.00 out of the claimed $128,000.00 was just.

Finally, in *United States v. Ferenci*, 2009 WL 2579102 (E.D.Cal. 2009), when the victim provided a total number representing the harm suffered, but could not break it down to show what portion was proximately caused by the defendant, the court looked to 18 U.S.C. § 2255 for guidance. § 2255 provides a civil remedy for victims of particular child abuse and exploitation offenses, and it applies a presumption that they have suffered no less than $150,000.00 in losses.  The *Ferenci* court relied on 3664(h) as a basis for using its discretion to apportion retribution and calculated that, of the presumed $150,000.00 in damages suffered by the victim, the defendant was the proximate cause of roughly two percent, and awarded $3000.00 in restitution. *Ferenci*, 2009 WL 2579102 at 5.

28

Given *Crandon*'s holding that § 2259 does not provide for a proportionality analysis, 173 F.3d at 126, applying joint and several liability to any losses that Amy can be shown to have suffered, by a preponderance of the evidence, will best balance between making Amy whole and not subjecting Defendant to greater restitution liability than his criminal activity warrants.[15]   As discussed above, the Court  will not make any findings as to the amount of Amy's losses at this stage, pending Defendant's anticipated motions and a hearing on same.

**VII.    An Award of Restitution is Constitutional**

Finally, the Court considers whether awarding restitution in this case will violate the Sixth Amendment right to a jury trial or the Eight Amendment prohibition on excessive fines and cruel and unusual punishment.  For the reasons below, the Court holds that when an award of restitution reflects a reasonable approximation of losses proximately caused by the Defendant, the Sixth and Eighth Amendments are not violated.

**A.       Sixth Amendment**

In *United States v. Leahy*, 438 F. 3d 328 (3d Cir. 2006), the Third Circuit Court of Appeals determined that an order of restitution is criminal, not civil, in nature, and does not violate the Sixth Amendment when judicial fact-finding supports an order of restitution. The Court of Appeals determined that under 18 U.S.C. §§ 3663 and 3663A, restitution is a criminal penalty, though it resembles a civil penalty benefitting a victim.  *Id.* at 334.  In restitution cases, the victim has no control over the amount to be awarded nor whether restitution shall be sought. *Id.*, *see also Kelly v. Robinson*, 479 U.S. 36 (1986).

---

15

The Court is mindful of the primary directive of 18 U.S.C. § 3553(a), that sentencing courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

The defendants in *Leahy* claimed that determining the facts necessary to support a restitution amount required a finding, beyond a reasonable doubt, by a jury. 438 F. 3d 328, at 355. The Court of Appeals held that since in cases governed by §§ 3663, 3663A, and 3664, the maximum penalty is the "full amount of the victim's losses," as long as the court does not go beyond the facts supporting a defendant's guilty plea or guilty verdict, the court will not exceed the statutory maximum in violation of the Sixth Amendment when setting the amount of restitution to be paid. *Id.* at 335-38. § 2259 also requires restitution be made in the "full amount of the victim's losses." Therefore, so long as the restitution amount is justified by the facts supporting Defendant's guilty plea, his restitution sentence will comply with the Sixth Amendment.

### B.    Eighth Amendment

The Third Circuit Court of Appeals dealt squarely with the issue of excessive fines in *United States v. Lessner*, 498 F. 3d 185 (3d Cir. 2007). There, the court held that while a grossly disproportionate restitution order is a violation of the Eighth Amendment, an order of restitution under § 3663A is inherently proportionate to the actual loss that was sustained as a direct result of the defendant's criminal acts. *Id.*, *see also United States v. Dubose*, 146 F. 3d 1141, 1145 (9th Cir. 1998) ("[P]roportionality is inherent in a MVRA restitution order. 'Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already build into the order.'"). While in *Lessner*, the amount of loss was uncontested, in *United States v. Graham*, 72. F.3d 352 (3d Cir. 1995), the Court of Appeals rejected the argument that an award of restitution for the "approximate amount of actual loss" violated the Eighth Amendment as "without merit." *Id.* at 206. In the instant case, since the Court has found that Defendant's conduct proximately caused Amy's harms, an award of restitution that approximates

30

those harms will satisfy the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the Court will award restitution to Amy in an amount to be determined once Defendant has been afforded the opportunity to contest the evidence regarding the losses she has suffered as a result of his criminal conduct.  Appropriate Order to Follow.


<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge

Date:          April 19, 2010

cc/ecf:        All parties of record
               U.S. Probation Office

31